UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREEM HASSAN MILHOUSE,<br><br>  Plaintiff,<br><br>v.<br><br>SUZANNE HEATH, et al.,<br><br>  Defendants. | CIVIL ACTION NO. 1:15-CV-01400<br><br>(RAMBO, J.)<br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

This is a civil rights action initiated upon the Court's receipt and filing of a complaint by *pro se* Plaintiff Kareem Hassan Milhouse on July 20, 2015. (Doc. 1).[1] An amended complaint has been filed in this matter on September 22, 2015. (Doc. 15-1). In his amended complaint, Milhouse asserts claims under the Eighth Amendment to the United States Constitution against various officials and administrators employed at the United States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg"); namely, Special Investigative Agents Suzanne Heath and James Fosnot, Case Manager R. Smith, and Warden David Ebbert. Milhouse asserts claims under the Fourteenth Amendment against officials and administrators employed at the United States Penitentiary at Hazleton, in Bruceton Mills, West Virginia ("USP-Hazleton"); specifically, Warden Terry O'Brien, Associate Warden V. Odom, Lieutenants Canfield and Grim, Special Investigative Agent Burchett, Unit Manager Brinson, Case Manager M. Boyd, and Counselor C. Bennett. Milhouse also names as Defendants Disciplinary Hearing Officer

---

[1] This Court granted Plaintiff's application to proceed *in forma pauperis* on September 2, 2015. (Doc. 12). Accordingly, Plaintiff's motion to voluntarily dismiss his amended complaint "unless" the Court has granted his motion to proceed *in forma pauperis* (Doc. 17), will be denied as moot.

Thomas McGhee, Regional Director C. Eichenlaub, the Federal Bureau of Prisons ("BOP"), the United States of America, and John Doe Defendants. For the reasons provided herein, the Court will dismiss the amended complaint pursuant to 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2) without prejudice to the filing of a second amended complaint.

## I. BACKGROUND[2]

On July 20, 2015, *pro se* Plaintiff Kareem Hassan Milhouse filed a *Bivens*-style[3] complaint, asserting violations of his Eighth and Fourteenth Amendment rights against various officials and administrators employed at USP-Hazleton and USP-Lewisburg. An amended complaint was filed on September 22, 2015.[4] (Doc. 15). In his amended complaint, Milhouse appears to challenge the initial decision to designate him to the Special Management Unit ("SMU") at the United States Penitentiary at Hazelton in Bruceton Mills, West Virginia ("USP-Hazleton"), where Plaintiff was incarcerated prior to his transfer to the United States

---

[2] The Court has provided only such detail as necessary to describe Milhouse's potential claims, as it is mindful of the institutional safety concerns that may be potentially implicated by nature of Milhouse's allegations contained within his amended complaint.

[3] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[4] As a matter of law, an amended complaint takes the place of the original complaint, effectively invalidating the original complaint. *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 162 (2d Cir. 2000) ("[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect."); *see* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1476 (2d ed. 1990) ("A pleading that has been amended . . . supersedes the pleading it modifies. . . . Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . ."). Therefore, since the complaint in this case had been amended, Milhouse's original complaint is now a nullity with no legal effect. *Smith v. Price*, No. 3:11-CV-1581, 2012 WL 1068159, at *1 (M.D. Pa. Mar. 5, 2012) *report and recommendation adopted*, No. 3:11-CV-1581, 2012 WL 1072282 (M.D. Pa. Mar. 29, 2012). Accordingly, Defendants Charles Samuels, Jr., the unidentified "Head of [the] Judicial Committee," the unidentified Pennsylvania senator, and Physician Assistant Jordan, will be terminated from the instant action.

Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg")[5]. Milhouse also appears to contest the failure of officials at USP-Lewisburg to protect him from cellmate attacks.

In support of his claims against officials at USP-Hazleton, Plaintiff acknowledges that while he received a hearing regarding his SMU designation, he was denied due process because he was not permitted to submit documentary evidence supporting his psychiatric diagnosis and was not afforded a staff representative at the hearing. Further, he alleges that the hearing was in conflict with BOP policy, as he "cannot be considered for a control unit with a mental illness." (Doc. 15-1, at 6).

With respect to his claims against officials and administrators at USP-Lewisburg, Milhouse alleges that he was originally assigned to the J Block with inmate Michael Little. (Doc. 15-1, at 2). Plaintiff claims that on November 17, 2014, his cellmate, Michael Little, was reassigned to a different block against his will. Approximately two hours after his cellmate was reassigned, Milhouse was assigned a new cellmate, Anthony Bernett, who he claims was violent and had an assaultive history. On November 20, 2014, Milhouse was assigned another cellmate, Lawrence Taylor, purportedly because inmate Taylor attacked his former cellmate by kicking him in his mouth while he was asleep. (Doc. 15-1, at 3). Milhouse submitted several "cop-outs" to Special Investigative Agents Suzanne Heath and James Fosnot, Case Management Officer Smith, and the Warden David Ebbert, in which he requested to be transferred because he was in fear of his cellmate. Milhouse alleges that he received no response from these individuals, except for Case Management Officer Smith, who responded with

---

[5] The dates Milhouse provides with respect to his claims against USP-Hazleton Defendants and USP-Lewisburg Defendants are confusing, as they appear to overlap, suggesting that he was incarcerated at both USP-Hazleton and USP-Lewisburg at the same time.

"sarcastic remarks." (Doc. 15-1, at 3). On December 18, 2014, Milhouse claims that he was assaulted by inmate Lawrence Taylor while he was secured in hand restraints. (Doc. 15-1, at 3). On June 11, 2015, Milhouse claims that he was forced to cell with inmate Elvin Lebron. (Doc. 15-1, at 3). According to Milhouse, on August 4, 2015, Milhouse's cell was searched and a knife was found under Inmate Lebron's mattress. (Doc. 15-1, at 3). Both Elvin Lebron and Milhouse received incident reports as a result of officials discovering contraband within their cell. (Doc. 15-1, at 3). Milhouse challenges the incident report and also alleges Elvin Lebron assaulted him.

Overall, Milhouse claims that the decision to separate him from his original cellmate, Michael Little, amounted to a "shrewed and calculated event[ ] perpetrated by prison officials." (Doc. 15-1, at 4).

## II. LEGAL STANDARDS

### A. RULE 12(B)(1) STANDARD

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Gould Electronics Inc. v. United States*, 220 F. 3d 169, 176 (3d Cir. 2000). In a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction. *Gould Electronics Inc.*, 220 F.3d at 178. This 12(b)(1) factual evaluation may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-92 (3d Cir. 1977). In addition, "[a] federal court may *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) when the allegations within the complaint 'are so attenuated and unsubstantial as to be absolutely devoid of merit, . . . wholly insubstantial, . . . obviously


frivolous, . . . plainly unsubstantial, . . . or no longer open to discussion.'" *DeGrazia v. F.B.I.*, 316 F. App'x 172, 173 (3d Cir. 2009) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994).

B. SECTION 1915 STANDARD

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 F. App'x. 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks*, 568 F. Supp. 2d at 588.

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the

> Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a motion to dismiss, a trial court must assess whether a complaint states facts upon which relief can be granted, and should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Additionally, a document filed *pro se* is "to be liberally construed." *Estelle*

*v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**III.   DISCUSSION**

   A.   *BIVENS* STANDARD

"A *Bivens* action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris Inc.,* 250 F.3d 789, 800 (3d Cir. 2001). To sustain a retaliation claim under *Bivens,* an inmate must demonstrate that (1) he engaged in constitutionally protected conduct; (2) he suffered adverse action; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse response. *See Carter v. McGrady,* 292 F.3d 152, 157–58 (3d Cir. 2002); *see also Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001). Plaintiff's instant case is a 28 U.S.C. § 1331 civil rights action under *Bivens*. In *Naranjo v. Martinez,* the Court stated:

> *Bivens* creates no substantive rights, but rather allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou,* 438 U.S. 478, 504, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978). A civil rights claim brought under Bivens is the federal counterpart to an action brought under 42 U.S.C. § 1983, and the same legal principles governing a § 1983 claim apply to a *Bivens* claim. *Brown v. Philip Morris Inc.,* 250 F.3d 789, 800 (3d Cir. 2001); *Paton v. LaPrade,* 524

F.2d 862, 871 (3d Cir. 1975); *Cyrus v. Hogsten,* No. 06–2265, 2007 WL 88745, at *3 (M.D. Pa. Jan. 9, 2007). To state a claim under *Bivens,* the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States. *Brown,* 250 F.3d at 800; *Cyrus,* 2007 WL 88745, at *3.

No. 4:CV–08–1755, 2009 WL 4268598, at *6 (M.D. Pa. Nov. 24, 2009).

A *Bivens* action is analogous to a civil rights action under 42 U.S.C. § 1983. *Naranjo,* 2009 WL 4268598, at *6.

### A. B<span>IVENS</span> C<span>LAIMS</span> B<span>ARRED BY</span> S<span>OVEREIGN</span> I<span>MMUNITY</span>

As a threshold matter, sovereign immunity bars all claims brought against the United States of America, the BOP, and the above-captioned federal employees in their official capacities. Indeed, sovereign immunity constitutes a jurisdictional bar to claims against the United States and its agencies, unless Congress has specifically waived such immunity. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) ("An action against government officials in their official capacities constitutes an action against the United States [and is] barred by sovereign immunity, absent an explicit waiver."); *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007).

As the amended complaint asserts no such waiver of sovereign immunity, Plaintiff's *Bivens* claims against the United States of America, the BOP, and the federal employees sued in their official capacities must be dismissed with prejudice for lack of subject matter jurisdiction

under Federal Rule of Civil Procedure 12(b)(1). *Lewal*, 289 F. App'x at 516; *Webb*, 250 F. App'x at 471.

    B.  *Bivens* Supervisory Liability Claims

As presently drafted, Plaintiff's amended complaint fails to state a claim of supervisory liability against Regional Director C. Eichenlaub, Warden David Ebbert, Warden Terry O'Brien, Associate Warden V. Odom, Lieutenant Grim, and Lieutenant Canfield. With respect to claims brought against supervisory officials arising out of alleged constitutional violations, it is well established that prison supervisors may be subject to liability only in narrowly defined circumstances. Civil rights claims cannot be premised on a theory of *respondeat superior*. Specifically, "it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the compliant occurred." *Johnson v. Holt*, No. 1:13-CV-1866, 2015 WL 672127, at *12 (M.D. Pa. Feb. 17, 2015). Rather, as explained by the Third Circuit:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (addressing § 1983 claim); *Millbrook*, 2014 WL 1235778, at *8 (quoting *Rode* in the *Bivens* context).

Thus, "in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates." *Crawford v. White*, No. 1:14-CV-1682, 2015 WL 3753930, at *8 (M.D. Pa. June 16, 2015). "Personal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them.*" *Jetter v. Beard,* 183 F. App'x 178, 181 (3d Cir. 2006) (emphasis added).

Here, the amended complaint fails to allege any personal involvement on the part of Regional Director C. Eichenlaub, Warden David Ebbert, Warden Terry O'Brien, Associate Warden V. Odom, Lieutenant Grim, and Lieutenant Canfield, as Plaintiff has premised liability on a theory of supervisory liability, which cannot form the basis of a *Bivens* claim. Indeed, Plaintiff fails to provide any specific factual allegations with respect Regional Director C. Eichenlaub, Associate Warden V. Odom, and Lieutenant Grim, but for conclusory accusations that these Defendants are "equally responsible as all other Defendants" in violating his constitutional rights. This cursory style of pleading is plainly inadequate to state a claim against a prison supervisor. Furthermore, Plaintiff suggests that Warden Terry O'Brien assumes liability for the actions of his subordinate, "C/O A. McCune[,] [who] labeled Plaintiff . . . a homosexual and rapist," that Warden David Ebbert is liable due to his "familiar[ity] with SMU policy[,] . . . h[is] discretion of who he accept[s] in his institution . . . [and] . . . [his] [ ]ability to resolve the issues that arise in this complaint," and that Lieutenant Canfield is liable for "le[aving] Plaintiff out to dry by providing information to C/O A. McCune." (Doc. 15-1, at 1; Doc. 15-1, at 7). Such allegations set forth in the amended complaint do not establish that these Defendants directed or acquiesced in any violations of Milhouse's constitutional rights.

Moreover, to the extent Milhouse attempts to premise liability against Warden David Ebbert and Associate Warden V. Odom on a theory that these officials failed to respond, or responded inappropriately, to his grievances, such claims fail as a matter of law. "An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances." *Crawford v. White*, No. 1:14-CV-1682, 2015 WL 3753930, at *9 (M.D. Pa. June 16, 2015) (citing *Speight v. Sims,* 283 F. App'x 880 (3d Cir. 2008); *Ramos v. Pa. Dep't of Corr.*, No. 4:CV-06-1444, 2006 WL

2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."). Moreover, "dissatisfaction with a response to an inmate's grievances does not support a constitutional claim." *Crawford*, 2015 WL 3753930, at *9 (citing *Alexander v. Gennarini,* 144 F. App'x 924 (3d Cir. 2005)). This is especially the case given that inmates have no constitutionally protected right to a grievance procedure. *Ramos*, 2006 WL 2129148, at *3.

As Plaintiff's allegations are insufficient to plead personal involvement by Regional Director C. Eichenlaub, Warden David Ebbert, Warden Terry O'Brien, Associate Warden V. Odom, Lieutenant Grim, and Lieutenant Canfield, the Court will dismiss these Defendants from the instant action without prejudice.

C. CLAIMS AGAINST JOHN DOE DEFENDANTS

While Milhouse names John Doe Defendants in his amended complaint, he indicates that he "need[s] discovery and/or other documents, especially for staff at designation sentencing and computation center and/or other BOP staff at USP-Hazleton and USP-Lewisburg." (Doc. 15-1, at 8). The amended complaint is completely devoid of facts with respect to any specific incident involving these John Doe Defendants that triggered the instant action and the role these Defendants played in the alleged misconduct. Although detailed factual allegations are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombley,* 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Accordingly, this Court will dismiss

John Doe Defendants from the action without prejudice to Milhouse filing a second amended complaint as against these individuals.

D. DUE PROCESS CLAIMS

It appears that Milhouse alleges a violation of the Due Process Clause of the Fourteenth Amendment against Disciplinary Hearing Officer Thomas McGee[6], Counselor C. Bennett[7], Case Manager M. Boyd, and Unit Manager Brinson, stemming from his initial placement in the Special Management Unit ("SMU") while incarcerated at USP-Hazleton. Although Milhouse

---

[6] Milhouse also claims that Disciplinary Hearing Officer Thomas McGee violated his due process rights by falsifying a record indicating that a staff representative was present at the hearing held to determine the appropriateness of assigning Plaintiff to the SMU. However, as described more fully herein, the fact that Milhouse was afforded a hearing to address his placement in the SMU did not entitle him to certain procedural due process protections, such as assistance from an inmate representative, as his transfer to the SMU does not implicate a due process liberty interest.

[7] Milhouse also claims that Counselor C. Bennett failed to secure his property, including legal documents, personal mail, his radio, prayer rug, cosmetics, sneakers, and food items prior to his transfer to the SMU. (Doc. 15-1, at 7). Milhouse fails to allege that these items were misplaced, lost, or stolen intentionally. Rather, it appears that Milhouse alleges that Counselor Bennet negligently failed to secure the items prior to his transfer to the SMU. Nevertheless, the Third Circuit Court of Appeals has held that an inmate fails to state a procedural due process claim when he is provided with a meaningful post-deprivation remedy regarding the loss of his property through an internal grievance procedure. *Mattis v. Dohman,* 260 F. App'x. 458, 461 (3d Cir. 2008) (citing *Hudson v. Palmer,* 468 U.S. 517, 533 (1984)). Thus, "the relevant inquiry is whether an adequate post-deprivation remedy was available to [Milhouse] to address the loss of his property." *Toney v. Sassaman*, No. 4:CV-11-0780, 2014 WL 1056826, at *11 (M.D. Pa. Mar. 18, 2014) *aff'd,* 588 F. App'x 108 (3d Cir. 2015). Here, the BOP Administrative Remedy Program "allows inmates to seek formal review of an issue relating to any aspect of his or her confinement." *Toney,* 2014 WL 1056826, at *11 (citing 28 C.F.R. §§ 542.10-542.19). "The BOP also has an administrative tort claims procedure whereby a federal inmate may file a claim with regard to his damaged or lost property." *Toney,* 2014 WL 1056826, at *11 (citing 28 C.F.R. §§ 543.30 - 543.32). Milhouse does not allege that these procedures were not available to him. Thus, Milhouse has failed to state a due process claim upon which relief may be granted. However, Milhouse will be granted leave to amend his complaint to assert a Fourteenth Amendment due process claim to the extent he can allege that these procedures were not available to him.

concedes that he was notified of his referral for placement in the SMU and that a hearing was held to determine whether the referral was appropriate, he argues that he was unable to procure staff representation for the hearing and that Defendants failed to compile requested documentary evidence on his behalf, in violation of BOP policy. (Doc. 15-1, at 7-8).

In order to determine whether a due process violation has occurred, an initial determination must be made as to whether Milhouse was deprived of a liberty interest. If no liberty interest is found to exist, it is unnecessary to define what process was mandated to protect it. See *Meekins v. Beard*, No. CIV. 3:CV-06-290, 2008 WL 647738, at *4 (M.D. Pa. Mar. 5, 2008). As explained by the Third Circuit, "a protected liberty interest can arise either from the Due Process Clause or from state law." *Mackey v. Smith*, 249 F. App'x 953, 954 (3d Cir. 2007) (citing *Asquith v. Dep't of Corr.,* 186 F.3d 407, 409 (3d Cir. 1999)). The Due Process Clause protects an inmate's right to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). Thus, a liberty interest is created only where "the conditions or degree of confinement to which the inmate is subjected are beyond the sentence imposed upon him or otherwise violate the Constitution." *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 470 (M.D. Pa. 2010) (citing *Fraise v. Terhune,* 283 F.3d 506, 522 (3d Cir. 2002)).

"The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976)). Indeed, "the mere fact of placement in administrative segregation is not in itself enough to implicate a liberty interest; the liberty

interest only exists if that placement is an 'atypical and significant hardship' relative to others similarly situated." *Leamer v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002). "Because disciplinary detention and 'administrative segregation [a]re the sort[s] of confinement that inmates should reasonably anticipate receiving at some point in their incarceration,' [an inmate's] transfer to 'less amenable and more restrict quarters' do not implicate a liberty interest protected by the Due Process Clause." *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)).

Here, the allegations, taken as true, do not lead to a plausible inference that Milhouse's initial placement in the SMU imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484; *Johnson v. Burris*, 339 F. App'x 129, 131 (3d Cir. 2009);*Griffin v. Vaughn,* 112 F.3d 703, 706 (3d Cir.1997). The amended complaint contains no facts supporting the conclusion that he was subjected to confinement that exceeded the sentence imposed upon him or otherwise violated the Constitution. Milhouse merely challenges the failure of the aforementioned Defendants in compiling his requested documentary evidence containing his diagnosis of a psychiatric disorder, and the absence of a staff representative at the hearing. Such claims pertaining to the quality of the hearing he received soon after his assignment to the SMU do not constitute a dramatic departure from the accepted standards for conditions of confinement, which would implicate a liberty interest. This conclusion is consistent with prior holdings of this Court that placement in the SMU does not implicate due process of law. *See Smith v. Dodrill, et al.,* Civ. No. 4:07–cv–2295, 2009 WL 62175, at *4, *11–*12 (M.D. Pa. Jan. 8, 2009); *Spencer v. Kelchner, et al.,* Civ. No. 3:06–cv–1099, 2007 WL 88084, at *10 (M.D. Pa. Jan. 9, 2007); *Francis v. Dodrill, et al.,* Civ. No. 3:04–cv–1694, 2005 WL 2216582, at *3–*5 (M.D. Pa. Sept. 12, 2005). Thus, while

Milhouse clearly would prefer not to be housed in the SMU, his preference is not a liberty interest protected by the Due Process Clause. *McKettrick v. Williamson*, No. CIV.A. 4:CV-06-0543, 2006 WL 1307929, at *6 (M.D. Pa. Mar. 22, 2006) *report and recommendation adopted in part,* No. CIV. 4:06-CV-543, 2006 WL 1307919 (M.D. Pa. May 10, 2006) (citation omitted).[8]

As Milhouse has failed to plead sufficient facts to state a claim that is at least plausible on its face, this Court will dismiss the claims against without prejudice for failure to state a claim upon which relief may be granted.

E. DELIBERATE INDIFFERENCE- FAILURE TO PROTECT

Milhouse also appears to allege that Special Investigative Agents Suzanne V. Heath[9], James Fosnot and Burchett, as well as Case Manager R. Smith, acted with deliberate indifference towards his safety in violation of the Eighth Amendment.

The Eighth Amendment imposes a "duty upon prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy,* 117 F.3d 742, 746 (3d Cir. 1997). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer v. Brennan*, 511

---

[8] Moreover, Milhouse claims that the "Special Management Unit program statement is in direct conflict with the . . . [Eighth] Amendment for the simple fact [that] it places Plaintiff in a substantial risk of harm[, as] Plaintiff was the victim of assault by cellmates . . . ." It appears that Milhouse alleges that the SMU program operates under an unconstitutional BOP Program Statement. To the extent Milhouse argues that the existence of the SMU somehow violates the Eighth Amendment, such a claim is meritless, as restrictive conditions in administrative custody, in and of themselves, do not violate the Eighth Amendment. *See Quijada v. Bledsoe*, No. 1:CV-08-2022, 2011 WL 1303224, at *9 (M.D. Pa. Mar. 31, 2011).

[9] Milhouse also alleges that Special Investigative Agent Suzanne Heath's cellmate assignment decisions based upon the similarity of the inmates' paperwork, somehow evidences a retaliatory motive. Milhouse's personal belief that he is the victim of retaliation amounts to nothing more than a conclusory allegation insufficient to establish a constitutional claim for retaliation.

U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). In order to state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must allege facts showing that: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi,* 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer,* 511 U.S. at 834; *Hamilton,* 117 F.3d at 746. "[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers–Capitol v. Whetzel,* 256 F.3d 120, 133 (3d Cir. 2001). Indeed, "a prison official cannot be found liable under the Eighth Amendment for failure to protect an inmate unless the official subjectively knew of and chose to disregard a substantial risk of serious harm to an inmate's health or safety." *Okey v. Strebig*, 531 F. App'x 212, 214 (3d Cir. 2013) *cert. denied,* 134 S. Ct. 446 (2013) (citing *Farmer,* 511 U.S. at 837; *Beers– Capitol,* 256 F.3d at 125). "A substantial risk of serious harm 'may be established by much less than proof of a reign of violence and terror,' but requires more than a single incident or isolated incidents." *Blanchard v. Gallick*, 448 F. App'x 173, 177 (3d Cir. 2011) (citing *Riley v. Jeffes,* 777 F.2d 143, 147 (3d Cir. 1985)). "Paramount here, a prison official's awareness of overall violence among the inmate or of violent propensities (or history of violence) of particular inmates [alone] does not supply an inference of deliberate indifference." *Buckley v. Kowalski*, No. CIV.A. 09-5460 RMB, 2015 WL 179385, at *4 (D.N.J. Jan. 14, 2015); *see also Bistrian v. Levi,* 696 F.3d 352, 367 (3d Cir. 2012) (holding that "allegations that the risk of harm that occurred was the risk that an inmate with a history of violence might attack another inmate for an unknown reason" is too speculative to give rise to an inference of deliberate indifference).

Accepting all allegations as true and drawing all reasonable inferences in favor of Milhouse, the Court finds that Milhouse has stated a plausible claim that Special Investigative Agents Suzanne V. Heath and James Fosnot, and Case Manager R. Smith, violated their constitutional duty to protect Milhouse from inmate Lawrence Taylor and inmate Elvin Lebron.[10] He avers that inmate Lawrence Taylor had assaulted his previous cellmate by "kicking him in the mouth while asleep," which resulted in Taylor's reassignment to Milhouse's cell, that both inmates were not complying with the SMU program, that both inmates were caught with knives, and that both inmates were particularly dangerous. Moreover, Milhouse alleges he "submitted several cop-outs" to Heath, Fosnot and Smith soon after being assigned these cellmates, in which he insisted that he feared for his life and that there were compatibility issues with these inmates.[11] He concludes, on the basis of these allegations, that the Defendants, although aware of the confrontations, did nothing to transfer or relocate him and, as a result, he was physically attacked. At this juncture, the Court finds these allegations sufficient to support an Eighth Amendment failure-to-protect claim against Special Investigative Agents Suzanne V. Heath and James Fosnot, as well as Case Manager R. Smith.

---

[10] While Milhouse claims that he has been assigned numerous other "violent" cellmates, he has not set forth any allegations that these other cellmates assaulted him.

[11] It appears that Milhouse additionally challenges the manner in which Special Investigative Agents Suzanne V. Heath and James Fosnot, and Case Manager R. Smith handled his administrative grievances. Prisoners have no constitutionally protected right to a grievance procedure. *See Jones v. N.C. Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *McGuire v. Forr,* Civ. A. No. 94-6884, 1996 WL 131130, at *1 (E.D. Pa. March 21, 1996), *aff'd,* 101 F.3d 691 (3d Cir. 1996). While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is a right of access to the courts, which is not violated by the failure of prison officials to address an inmate's grievance. Accordingly, to the extent that Milhouse claims that these Defendants violated his constitutional rights by failing to take corrective action following his submission of an institutional grievance, such a claim is without merit.

However, Milhouse has failed to state a claim of deliberate indifference against Special Investigative Agent Burchett. Milhouse alleges, in a conclusory manner, that Special Investigative Agent Burchett failed to protect Milhouse. (Doc. 15-1, at 7). Indeed, the amended complaint is completely devoid of facts with respect to any incident involving this Defendant that triggered the instant action and the role this Defendant played in the alleged misconduct. Although detailed factual allegations are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombley,* 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Accordingly, as there are insufficient allegations in the amended complaint to impose liability on Special Investigative Agent Burchett, this Court will dismiss this Defendant from the instant action without prejudice.

F.  LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Milhouse has not been given leave to amend his complaint previously in this matter. Although it would be futile to allow Milhouse an opportunity to amend his complaint against the Federal Bureau of Prisons, the United States of America, and the prison employees in their official capacities, there is nothing to suggest that amendment of Milhouse's claims against the remaining Defendants in their individual capacities would be futile, nor is there any basis to believe it would be inequitable. As such, Milhouse will be granted leave to amend his complaint within thirty (30) days of the date to assert the following:

1. Any claims against Regional Director C. Eichenlaub, Warden David Ebbert, Warden Terry O'Brien, Associate Warden V. Odom, Lieutenant Grim, and Lieutenant Canfield, to the extent he can plead additional facts demonstrating with particularity the personal involvement of these Defendants in the alleged misconduct;

2. Any claims against John Doe Defendants;

3. A Fourteenth Amendment due process claim against Disciplinary Hearing Officer Thomas McGee, Counselor C. Bennett, Case Manager M. Boyd, and Unit Manager Brinson;

4. An Eighth Amendment failure-to-protect claim against Special Investigative Agent Burchett;

5. A First Amendment retaliation claim against Special Investigative Agent Suzanne V. Heath.

## IV.  CONCLUSION

Based on the foregoing, Plaintiff's amended complaint (Doc. 15-1), will be dismissed without prejudice pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff will be granted leave to amend his complaint as described above within thirty (30) days following the dismissal of his complaint. The second amended complaint shall be complete in all respects. It must be a new pleading that stands by itself as an adequate complaint without reference to the previously filed complaints, which means that it must include the sufficiently pled Eighth Amendment failure-to-protect claim as against Special Investigative Agents Suzanne V. Heath and James Fosnot, and Case Manager R. Smith. Consequently, all causes of action alleged in the amended complaint that are not alleged in the second amended complaint will be waived. Moreover, the Clerk is directed to terminate Charles Samuels, Jr., the unidentified "Head of [the] Judicial Committee," the unidentified Pennsylvania senator, and Physician Assistant Jordan, from the instant action.

An appropriate Order follows.

                                                  **BY THE COURT:**

**Dated: November 4, 2015**                       *s/ Karoline Mehalchick*
                                                          **KAROLINE MEHALCHICK**
                                                           **United States Magistrate Judge**