UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREEM HASSAN MILHOUSE,<br><br>Plaintiff,<br><br>v.<br><br>SUZANNE HEATH, et al.,<br><br>Defendants. | CIVIL ACTION NO. 1:15-CV-01400<br><br>(KANE, J.)<br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

This case involves a *pro se* Plaintiff Kareem Hassan Milhouse ("Milhouse"), who has filed the above-captioned *Bivens*-style lawsuit, asserting violations of his First, Eighth, and Fourteenth Amendment rights by various officials and administrators employed at USP-Hazelton and USP-Lewisburg.[1] (Doc. 113; Doc. 337). Milhouse is a federal inmate currently incarcerated at USP Coleman-1 in Coleman, Florida. (Doc. 113; Doc. 337). Before the Court is Milhouse's motion to compel discovery (Doc. 352), motion to disqualify (Doc. 356), motion to defer Prisoner Litigation Reform Act ("PLRA") payments. (Doc. 368), and "motion for inquiry/reschedule deposition." (Doc. 376). For the following reasons, the motions shall be denied.

I. **BACKGROUND AND PROCEDURAL HISTORY**

Milhouse initiated the instant *Bivens* action on July 20, 2015, alleging harm suffered at the hands of cellmates caused by the indifference of prison officials despite multiple warnings of pending injury. (Doc. 1). Currently operative is Milhouse's supplemental complaint, filed

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (recognizing for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights).

on July 19, 2021, against remaining Defendants Suzanne Heath, David Ebbert, Brent Taggart, Correctional Officers Good and Nadiya, Case Manager Ryan Smith, Counselor Robert Marr, and Special Investigative Supervisor Daniel Knapp (collectively, the "Defendants"). (Doc. 337). Milhouse's pleadings assert violations of his First, Eighth, and Fourteenth Amendment rights. (Doc. 113; Doc. 337).

On December 2, 2020, the Court stayed this action in an attempt to secure counsel for Milhouse. (Doc. 309). The stay was lifted on March 17, 2021, and Defendants were ordered to respond to Milhouse's various outstanding motions and requests for the production of documents and interrogatories. (Doc. 322). On April 14, 2021, the Court denied Milhouse's motions (Doc. 285; Doc. 297; Doc. 301; Doc. 303; Doc. 305; Doc. 311; Doc. 313; Doc. 316) with the exception of his motion to supplement the complaint (Doc. 297), which was granted. (Doc. 327). On July 19, 2021, Milhouse filed his supplement complaint. (Doc. 337).

On November 23, 2021, Milhouse filed a motion for immediate injunction, and on November 29, 2021, Milhouse filed a renewed motion for summary judgment. (Doc. 342; Doc. 343). On December 22, 2021, Defendants requested an extension of the discovery, deposition, and dispositive motion deadlines, which the Court granted on January 3, 2022, allowing for discovery and depositions to be completed by April 1, 2022, and dispositive motions and briefs to be due by May 1, 2022. (Doc. 344; Doc. 345).

Milhouse filed the motion to compel discovery on January 4, 2022, and the motion to disqualify on February 4, 2022. (Doc. 352; Doc. 356). On February 7, 2022, the undersigned issued a report and recommendation denying Milhouse's motion for immediate injunction, which is currently pending before the District Court. (Doc. 359). Subsequently, Milhouse filed a motion for "inquiry" on February 15, 2022, and a motion for default judgment on February

23, 2022.² (Doc. 360; Doc. 366). On February 23, 2022, Milhouse filed the motion to defer PLRA payments. (Doc. 368). On March 3, 2022, Defendants filed a motion to take the deposition of Milhouse by remote means, which the Court granted on March 4, 2022. (Doc. 371; Doc. 373). On March 28, 2022, Milhouse filed a "motion of inquiry/reschedule deposition."³ (Doc. 376; Doc. 377). On April 4, 2022, Defendants filed a motion for enlargement of time to respond to discovery and the filing of any dispositive motions for thirty (30) days until May 1, 2022.⁴ (Doc. 378). The instant motions are fully briefed and ripe for disposition.

II.   **DISCUSSION**

   A.   MOTION TO COMPEL DISCOVERY

In the motion to compel, Milhouse requests camera surveillance footage from USP-Lewisburg and the production of documents from Defendants. (Doc. 352, at 1-2). In

---

² The undersigned will address these motions in a separate report and recommendation.

³ The motion does not contain a specific inquiry or request for relief apart from the title: "Motion for Inquiry/Reschedule Deposition." (Doc. 376; Doc. 377). Milhouse states that he is experiencing intense back pain and that he is not being treated by medical staff. (Doc. 377, at 1). On March 4, 2022, the Court granted Defendants' motion for leave to conduct Milhouse's deposition by remote means pursuant to Fed. R. Civ. P. 30(b)(4). (Doc. 373). Construing the *pro se* filing liberally, Milhouse's motion will be **GRANTED** to the extent that he requests to reschedule his deposition by Defendants. (Doc. 376). Defendants are directed to coordinate with Milhouse to schedule the taking of Milhouse's deposition. In addition, Milhouse is directed to testify at his deposition at the agreed-upon date and time.

⁴ Upon consideration of Defendants' arguments, Defendants' motion for extension of time is **GRANTED**. (Doc. 378). Defendants shall respond to discovery received on January 4, 2022, and January 28, 2022, on or before May 1, 2022. Furthermore, Defendants are not required to respond to any additional discovery received on or after April 1, 2022, as the discovery deadline has expired. Additionally, the dispositive motions deadline is extended to June 1, 2022, and further deadlines will be set by the Court after the resolution of any dispositive motions.

opposition, Defendants argue that although Milhouse did not properly serve counsel or Defendants with requests for the production of documents, counsel for Defendants are nevertheless in the process of compiling responses to all of Milhouse's discovery requests. (Doc. 364, at 4). Defendants state that their responses will be completed before the current discovery deadline, and, therefore, request that the Court deny Milhouse's motion to compel. (Doc. 364, at 5; Doc. 374, at 5). Further, Defendants argue that answering Milhouse's discovery requests "has required the direct input from individual defendants, which required locating and communicating directly with each responding defendant some who have retired from federal employment." (Doc. 378, at 3).

> The general scope of discovery is outlined by Federal Rule of Civil Procedure 26(b)(1):
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.
>
> Fed. R. Civ. P. 26(b)(1).

Rule 26 establishes a liberal discovery policy. *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 226-27 (M.D. Pa. 2014); *Great West Life Assurance Co. v. Levithan*, 152 F.R.D. 494, 497 (E.D. Pa. 1994). Issues relating to the scope of discovery permitted under Rule 26 rest in the sound discretion of the court. *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. *Marroquin–Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). "Although the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is

not without its limits." *Banks v. Beard*, No. 3:10-CV-1480, 2013 WL 3773837, *2 (M.D. Pa. July 17, 2013) (citing *Stabilus v. Haynsworth, Baldwin, Johnson & Greaves, P.A.*, 144 F.R.D. 258, 265 (E.D. Pa. 1992)). "Discovery requests may be curtailed to protect a person from whom discovery is sought from 'annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 238 (E.D. Pa. 2014) (quoting Fed. R. Civ. P. 26(c)(1)).

Under the local rules, "[i]nterrogatories, requests for disclosures, requests for documents, requests for admissions, and answers and responses thereto *shall be served upon other counsel and parties* but shall not be filed with the court" unless authorized by the federal or local rules or an order of the Court. L.R. 5.4(b) (emphasis added). Milhouse fails to establish that he has served Defendants with these discovery requests. (Doc. 352). Even assuming Milhouse properly served the interrogatories and requests for production of documents, Defendants submit that their responses to the requests will be completed prior to the current discovery deadline of May 1, 2022. (Doc. 374, at 5; Doc. 378, at 1). Accordingly, the Court will deny the motion to compel without prejudice to Milhouse filing a later motion if Defendants fail to meet the discovery deadline. (Doc. 352).

  B. M<span>OTION TO</span> D<span>ISQUALIFY</span>

Milhouse seeks to disqualify counsel for Defendants, Timothy S. Judge ("Mr. Judge"). (Doc. 356). In support of this motion to disqualify, Milhouse argues that Mr. Judge "is partial and biased and refused to investigate this perjury but used its testimony to defeat [Milhouse]'s motion to compel." (Doc. 357, at 2). In addition, Milhouse asserts that he has been refused the opportunity to review the requested surveillance footage. (Doc. 357, at 1). In opposition,

5

Defendants submit that Milhouse's motion is "frivolous, harassing and sanctionable." (Doc. 363, at 1).

Federal courts maintain an "inherent power to supervise attorney conduct" when an attorney appears before the court. *Saldana v. Kmart Corp.*, 260 F.3d 228, 235 (3d Cir. 2001). This inherent authority includes the "power to disqualify an attorney" where necessary, although "a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980); *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). The Third Circuit has cautioned that a court:

> [S]hould disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel for her choice and enabling attorneys to practice without excessive restrictions.

*Miller*, 624 F.2d at 1201. Because such motions "are generally disfavored," "[t]he party seeking disqualification must clearly show that continued representation would be impermissible . . . [and, a]s such, vague and unsupported allegations are not sufficient to meet this standard." *Thomas v. Duvall*, No. 3:16-CV-00451, 2020 WL 6747436, at *2 (M.D. Pa. Nov. 17, 2020) (quoting *Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D. Del. 2006)).

In opposition to the motion to disqualify, Defendants assert that Milhouse has also not proffered any evidence to substantiate the allegations that he has not been permitted to view the footage or how Mr. Judge showed partiality or bias. (Doc. 363, at 6). Defendants submit that counsel adequately responded to Milhouse's request for production, provided the

Bureau of Prisons ("BOP") with a disc containing the requested surveillance footage, and relied on the assistance of the BOP to provide Milhouse with access to such footage. (Doc. 363, at 4-6). Attached to the brief in opposition is a declaration completed by Patrick Hart, the Case Manager at USP Coleman-1, dated March 30, 2021. (Doc. 326-1, at 1). In the declaration, Patrick Hart states that the surveillance videos were produced and "stored in a secure unit team area." (Doc. 326-1, at 1). Patrick Hart declares that he informed Milhouse that he is permitted to review the videos upon request, however, as of the date of the declaration, Milhouse has not requested to review them. (Doc. 326-1, at 1). To the extent that Milhouse seeks to redress issues regarding matters within USP Coleman-1, Defendants assert, and the Court agrees, that Milhouse must first exhaust the BOP administrative process prior to bringing suit. (Doc. 363, at 6); *see* 28 C.F.R. §§ 542 *et seq*.

Given the affidavit describing Defendants' production of the surveillance videos that Milhouse seeks and the fact that Milhouse has not requested to review such footage or produced evidence to the contrary, Milhouse has not proffered any evidence to support his claim that Mr. Judge "committed misconduct." (Doc. 357, at 2). There is no objective evidence of biasedness or partiality by Defendants against Milhouse, so as to warrant disqualification. Recognizing that disqualification motions are disfavored and acknowledging that it is the movant's burden to show that disqualification is warranted, the Court finds that Milhouse has not met this burden. *Thomas*, 2020 WL 6747436, at *2. Accordingly, the Court will deny the motion without prejudice to Milhouse filing a later motion to disqualify that sets forth facts showing that counsel's conduct is improper. (Doc. 363).

C.  MOTION TO DEFER PLRA PAYMENTS

Milhouse requests that the Court "issue an Order to defer payment on all PLRA fees until the Covid lockdown is over." (Doc. 368, at 1). Milhouse asserts that he "is indigent, or rather does not have access to institutional employment due to Covid lockdown which is nearing 2 [years]. The stimulus checks went to PLRA fee." (Doc. 368, at 1).

The PLRA recognizes that a prisoner may not have the financial assets or means to file a civil action or appeal a civil or criminal judgment. Therefore, the PLRA provides:

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1).

"*In forma pauperis* status merely 'defers, but does not permanently excuse, the payment of filing fees.' " *Merritt v. Supplee*, No. 20-CV-1054, 2020 WL 3469033, at *1 n.2 (E.D. Pa. June 25, 2020) (quoting *In re Smith*, 114 F.3d 1247, 1251 (D.C. Cir. 1997)); *see also Lucien v. DeTella*, 141 F.3d 773, 775 (7th Cir. 1998) ("All § 1915 has ever done is excuse pre-payment of the docket fees; a litigant remains liable for them, and for other costs, although poverty may make collection impossible.") (internal quotation marks and citations omitted) (emphasis in original); *Robbins v. Switzer*, 104 F.3d 895, 898 (7th Cir. 1997) ("Unsuccessful litigants are liable for fees and costs and must pay when they are able."). Therefore, when a prisoner has the means to pay PLRA fees as required by § 1915(b), failure to pay may result in the dismissal of a prisoner's action. *See In re Smith*, 114 F.3d at 1251.

In this case, Milhouse was granted leave to proceed *in forma pauperis* on appeal pursuant to 28 U.S.C. § 1915(b) on July 12, 2019. (Doc. 236; Doc. 251). The Court ordered that Milhouse "is required to pay the full $505.00 fee in installations regardless of the outcome of the appeal." (Doc. 236, at 1; Doc. 251, at 1). In pertinent part, the Order provided:

> The Court hereby directs the warden or his or her designee to assess an initial filing fee, when funds are available, of 20% of the greater of (a) the average monthly deposits to the prisoner's account; or (b) the average monthly balance in the prisoner's account for the six month period immediately preceding the filing of the notice of appeal. The warden, or his or her designee, shall calculate, collect, and forward the initial payment assessed in this order to the United States District Court for the Middle District of Pennsylvania. In each succeeding month when the amount in the prisoner's account exceeds $10.00, the warden, or his or her designee, shall forward payments to the United States District Court for the Middle District of Pennsylvania equaling 20% of the preceding month's income credited to the prisoner's account until the fees are paid.

(Doc. 236, at 1; Doc. 251, at 1); *see* 28 U.S.C. § 1915(b)(2).

Milhouse, proceeding *in forma pauperis*, is not excused from paying the full appeal filing fee. *See In re Smith*, 114 F.3d at 1251. As set forth in the Court Order, the warden at USP Coleman-1 will not forward payment of the initial filing fee and monthly installments unless there are sufficient funds in Milhouse's prisoner account. (Doc. 236, at 1; Doc. 251, at 1). Therefore, when circumstances warrant such payment, Milhouse is required to pay PLRA fees and failure to do so may result in the dismissal of Milhouse's appeal. *See In re Smith*, 114 F.3d at 1251. Accordingly, the Court will deny Milhouse's motion to defer PLRA payments. (Doc. 368).

III. **CONCLUSION**

For the foregoing reasons, Milhouse's motion to compel discovery (Doc. 352), motion to disqualify (Doc. 356), and motion to defer PLRA payments (Doc. 368) are **DENIED**. In

addition, Milhouse's "motion for inquiry/reschedule deposition" (Doc. 376) and Defendants' motion for extension of time (Doc. 378) is **GRANTED**.

An appropriate Order follows.

BY THE COURT:

**Dated: April 13, 2022**

*s/Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**